560     N. O., J. & G. N. R. R. *v.* Miss. Col.     [Sup. Ct.

Statement of the case.

## New Orleans, Jackson and Great Northern Railroad Company v. Mississippi College.

1. EQUITY JURISDICTION—LOST BONDS—PROFERT.—Equity jurisdiction, in cases of lost bonds, originates in the doctrine of *profert* at common law. It being impossible to produce a lost bond, as required by the ancient rule of pleading in the common law courts, the courts of chancery, in such cases, entertained jurisdiction to compel its re-execution and the payment of the money it secured. And now, though *profert*, in case of loss, is dispensed with, the equity jurisdiction, in such cases, still survives, and should be applied whenever the loss of the bonds exposes the owner to undue perils in the future assertion of his rights.

2. CASE AT BAR.—The lost bonds in this case having considerable time yet to run before maturity, derive their chief value from their commercial character. Of the enjoyment of this value, the owners would be deprived by the accidental loss. Against this, it is in the power of a court of equity to grant relief by decreeing a re-issue.

3. BONDS OUTSTANDING AND NOT LOST.—But it is onerous and erroneous to decree such relief in respect to bonds not lost, without requiring the owner to give ample indemnity against the re-appearance, in the hands of *bona fide* holders, of such outstanding bonds.

4. BONA FIDE HOLDERS OF LOST BONDS.—A *bona fide* holder, for value, of a lost bond, is entitled to recover the full amount of principal and interest due thereon, notwithstanding he may have had a suspicion and good grounds for suspicion of defect in the title, and been guilty of gross negligence in respect to it at the time of the transfer. His title will not be defeated, unless he was also guilty of bad faith.

APPEAL from the chancery court of Hinds county, 1st district. CABANISS, Chancellor.

The following are the errors assigned:

1. The court below erred in decreeing that the appellant should issue bonds in lieu of those alleged to be lost or destroyed.

2. The proof does not establish the fact of loss or destruction.

3. The bond taken by the court below for indemnity is not sufficient in amount.

*W. P. Harris* and *Nugent & Yerger*, for appellant.

*C. E. Hooker*, for appellee.

PEYTON, C. J.:

This is an appeal from a decree of the chancery court of Hinds county, requiring the appellant to re-issue to the appellee four first-class mortgage bonds, numbered respectively 1149, 1150, 1151 and 1152, with coupons of interest atttached, payable semi-annually, from the 1st day of January, 1863, instead of four first-class mortgage bonds, issued by appellant in September, 1857, to James Roach, treasurer of the appellee, which have since been lost or destroyed, and to pay the appellee the interest accrued thereon, and enjoining the appellant from paying first-class mortgage bond, numbered 1153, issued by appellant to the appellee at the same time that the before mentioned bonds were issued, and the interest thereon, until further order of court.

It appears from the letter of R. S. Charles, treasurer of the railroad company referred to in and accompanying the answer of said company, that the bonds specified in the bill of complaint were issued by the said railroad company in September, 1857, to the treasurer of the Mississippi College.

And upon a careful examination of the proofs in the cause, we are of opinion that the loss or destruction of the first four bonds, specified in the bill of complaint, is sufficiently established. And the question presented for our consideration is, whether a court of equity has power to compel the issuance of new bonds in lieu of those lost or destroyed.

The jurisdiction in the case of lost bonds originates in the doctrine of *profert* at law. It was anciently a rule of pleading in the common law courts, that they could give no remedy for a debt secured by bond, unless the creditor offered to produce his bond in court. This was called making *profert* of the bond. If the bond were lost, *profert* was impossible, and the remedy at law was gone. But the court of chancery, on proof that the bond was really lost, entertained jurisdiction to

compel its re-execution and payment of the money secured. The rule requiring *profert* is now dispensed with at law, in the event of loss; but the change of practice at common law does not annul the jurisdiction in equity. Adams' Eq. 166, 167. It thus appears that a court of chancery not only has the power to enfore the payment of a lost bond upon sufficient indemnity given the obligor, but also to compel a re-execution of it.

It is true, however, that a court of equity will not, in all cases of lost bonds, decree the execution of new ones; but if such loss exposes the owner to undue perils in the future assertion of his rights, such a decree is eminently proper, and, as we think, accords with the principles which govern this court in similar cases. In 1 Mad. Ch. 24, it is laid down as elementary that when an instrument on which a title is founded is lost, a court of equity will interfere to supply the defect occasioned by such accident.

This view of the jurisdiction of the court is entertained in New Hampshire, where it was held, that on satisfactory proof of the loss of a mortgage deed of land which had not been recorded, made to secure the maintenance of the mortgagee and his wife, a court of equity will decree that the mortgagors execute a new mortgage in lieu of the lost one. Lawrence v. Lawrence, 42 N. H. 109.

In the case under consideration, the bonds, having a considerable time to run before their maturity, derive their chief value from their commercial character, and the owners, were it not for the loss, might realize, in the meantime, money upon them, by sale or hypothecation, and of which use and enjoyment of their rights, in this respect, they have been deprived by accident, against which, it is believed to be within the power of a court of equity to relieve the appellee by decreeing a re-issue of the bonds, which are shown to have been lost. The

decree, therefore, so far as it directs the railroad company to issue new bonds, in lieu of those that are lost, to the Mississippi College, is correct.   But it is erroneous so far as it enjoins the railroad company from paying the bond, and the interest thereon, that is not lost and is still outstanding, and in not requiring the college to give a bond of indemnity of an amount sufficient to protect the railroad company against the re-appearance of the bonds that are alleged to be lost, in the hands of *bona fide* holders.

These bonds were ordinary coupon bonds, payable to bearer, and as such are negotiable by the commercial usages of the whole civilized world, and their value, as before remarked, depends mainly upon this character. They are entitled, therefore, to the immunities which, under the commercial law, attach to this species of property.   These bonds being transferable by mere delivery, notwithstanding the original owner may have lost them by accident, yet a *bona fide* holder of them or either of them would be entitled to recover the amount of principal and interest due thereon.

With respect to this right of the holder of commercial paper, Lord Denman, in delivering the opinion of the court in the case of Goodman v. Harvey, 4 Adolphus and Ellis, 870, uses this language: " I believe we are all of opinion that gross negligence would not be a sufficient answer, where the party has given a consideration for the bill.   Gross negligence may be evidence of *mala fides*, but is not the same thing.   We have shaken off the last remnant of the contrary doctrine, where the bill has passed to the plaintiff, without any proof of bad faith in him, there is no objection to his title." This case was followed in this country by the supreme court of the United States in the following cases, to wit: Swift v. Tyson, 16 Pet. 1 ; Goodman v. Simonds, 20 How. (U. S.) 343 ; The Bank of Pittsburg v. Neal, 22

ib. 96; Mercer County v. Hacket, 1 Wall. 83; Murray v. Lardner, 2 ib. 110.

These cases establish the doctrine that coupon bonds of the ordinary kind, payable to bearer, pass by delivery. And that a purchaser of them, in good faith, is unaffected by the want of title in the vendor. The burden of proof, on a question of such faith, lies on the parties who assail the possession. The party who takes such commercial paper before it is due, for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world.

Suspicion of the defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. It becomes a question of honesty or dishonesty on the part of the holder, for guilty knowledge and wilful ignorance alike involve the result of bad faith. They are the same in effect. Where there is no fraud, there can be no question. This is believed to be the settled law upon this subject, founded on commercial necessity, reason and authority.

According to the principles above laid down, unless the railroad company can successfully impeach the right of the holder of the fifth of said bonds, which is admitted to exist and be outstanding, it will be compelled to pay the same to any *bona fide* holder thereof, and an injunction against the payment of the same would not protect, but tend only to embarrass the company, and therefore the injunction restraining the railroad company from paying the bond numbered 1153, and the interest thereon, to any *bona fide* holder, was improperly granted. It is, however, the duty of the company to withhold the payment of that bond and

interest, if it can successfully impeach the title of the holder thereof.·

We have arrived at the conclusion that the railroad company should re-issue·to the Mississippi College the four first named bonds, upon the execution of a good and ·ufficient bond by the said college to save harmless and indemnify the· said railroad company against the claim or claims ·of any holder of said bonds alleged to be lost.

The bond of indemnity decreed to be given by the appellee to protect the appellant against the re-appearance of the bonds alleged to be lost in the hands of *bona fide* holders of them, being insufficient, the court below will, upon the return of this cause for further action according to the principles of this decision, take a bond from the appellee amply sufficient for the protection and indemnity of the appellant.

For the reasons herein stated, the decree is reversed, the injunction dissolved, and the cause remanded for further proceedings in accordance with this opinion.