The Chesapeake and Ohio Canal Company *vs.*
William B. Blair.

*Party defendant—Lost Bonds—Relief in Equity for the Loss
or destruction of Bonds and Negotiable securities.*

Certain coupon bonds of the Chesapeake and Ohio Canal Company, known as
Preferred Bonds, intended to pass by manual delivery, and having the
qualities of negotiable paper, were lost or destroyed without the fault of the
owner. On a bill filed by the owner against the Chesapeake and Ohio
Canal Company, seeking relief, it was HELD :

1st. That the State of Maryland was not a necessary party defendant.

2nd. That the complainant having waived his claim to have the bonds replaced
by duplicate coupon bonds, and being willing to accept in lieu thereof non-
negotiable certificates of indebtedness payable at the same time as said bonds,
with interest thereon, the defendant should issue and deliver to the com-
plainant certificates of indebtedness corresponding in amount with the bonds
respectively, the said certificates of indebtedness to take the place of the said
bonds, the complainant to give bond to indemnify the defendant against loss
by reason of the payment of interest on said certificates, or of the principal
thereof.

Where the loss or destruction of bonds and negotiable securities, has happened
without the negligence or fault of the party applying, equity will grant
relief, provided such relief can be given without derogating from any posi-
tive agreement, or violating any equal or superior equity in other parties.

The relief will be granted however upon the condition that full and secure
indemnity shall be given the defendant against all risk.

APPEAL from the Circuit Court of Baltimore City.

The appellee was, for some years prior to 1861, the
owner of certain coupon bonds of the Chesapeake and
Ohio Canal Company, commonly known as Preferred
Bonds. In the early part of the late war being neces-
sarily separated from his wife, Judeth C. Blair, he com-

mitted these bonds to her for safe-keeping. The interest on them was regularly collected from the State of Virginia, as guarantor, up to January, 1865. In April, 1865, Mrs. Blair was residing upon the plantation of Lewis E. Harvie, in Amelia County, Virginia. At the time of the evacuation of Petersburg by the Confederate forces, fearing that the bonds might be stolen, she placed them in two glass jars, sealed, and entrusted them to Henry A. Hastings, the overseer of Mr. Harvie, with directions to bury them in some safe place. This he did. Shortly thereafter, Mrs. Blair's nephew and the overseer discovered that the bonds had been stolen. Efforts were made in the neighborhood to recover them, but without success. Soon after their loss was discovered, they were advertised in a Richmond newspaper; their number and denominations were given and a reward was offered for their recovery. They were advertised subsequently and a larger reward offered, but they were never returned, and no traces of them were ever discovered. A bill was filed against the appellant by the appellee setting forth his ownership and the loss of the bonds, and asking that a decree might be passed directing the defendant to issue to the complainant duplicate bonds of the Company of the same tenor and effect as the bonds lost, upon such conditions as to adequate and complete indemnity as the Court might consider just and equitable. The Chesapeake and Ohio Canal Company answered the bill denying the right of the complainant to have the relief asked for, and insisting that the State of Maryland was a necessary and indispensable party to the bill and had a right to be heard. The Court, (PINKNEY, J.,) adjudged that the complainant was entitled to relief, but inasmuch as he was content to waive his claim to have the bonds replaced by duplicate bonds, and was willing to accept in lieu thereof non-negotiable certificates of indebtedness payable at the same time as said bonds, with interest thereon, payable semi-

annually, from the first day of July, 1865, inclusive, it decreed that the defendant should issue and deliver to the complainant certificates of indebtedness corresponding in amount with the said bonds, with interest payable semi-annually—the said certificates of indebtedness to take the place of said bonds, to become due at the same time precisely as the bonds themselves, and to be secured, both as to the principal and interest thereon, as the said bonds themselves were, under the provisions of the Act of 1844, ch. 281. The Court further decreed that the complainant should file with the Clerk of the Court an approved bond, or bonds, to indemnify and protect the defendant against any loss or damage by reason of the payment of said certificates or the interest thereon.

From this decree the defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, STEWART and ALVEY, J.

*Bernard Carter* and *Wm. Pinkney Whyte*, for the appellant.

Proper parties were not made to the cause. The State of Maryland is a necessary and indispensable party to the bill. Her interest and status, as mortgagee of the Chesapeake and Ohio Canal Company, is known to the Court.

It will be remembered, that, in order to allow this Court to entertain the bill for the ascertainment and adjustment of the claims of the several classes of the creditors of the company, which was before this Court in the case of *Commonwealth of Virginia vs. C. & O. C. Co.*, 32 *Md.*, 505, the Act of 1870, ch. 59, was passed, authorizing and directing the Attorney General to appear to the cause for the State. This Act of 1870, ch 59, has been repealed by the Act of 1874, ch. 459.

It is plain, that in the absence of an Act of Assembly of Maryland, authorizing it, the State of Maryland cannot

be made a party defendant to this cause. If, therefore, she is a necessary party, the decree in this cause must not only be reversed because the State *was not* made a party to the bill, but moreover, the bill must be *dismissed,* because she *cannot* be made such party in the present condition of her legislation on this subject.

That the absence of an indispensably necessary party is reason for the refusal of the Court to entertain jurisdiction of the cause, though such party *cannot* be brought before the Court, is well settled. *Story's Eq. Plead., secs.* 72 *to* 77, 81, 182.

But, independently of the want of proper parties, the case made by the bill is not one for relief in a Court of equity. The bonds in question being coupon bonds, they pass from hand to hand like bank notes, and a *bona fide* holder may enforce them, independent of all equities existing between the company and the first holder. *Murray vs. Lardner*, 2 *Wallace,* 110; *Thompson vs. Lee Co.,* 3 *Wallace,* 327; *Commonwealth vs. Comms. of All. Co.,* 37 *Pa.,* 237; *Norris Canal Co. vs. Fisher,* 1 *Stockton,* 667; *Finnegan vs. Lee,* 18 *How. Pr.,* 186; 3 *Am. Law Rep.,* 423.

The requirement of the decree which provides for non-negotiable certificates, in lieu of coupon bonds, does not protect the appellant.

The bonds which are now supposed to be lost may be in existence, and may be presented after a large number of the instalments of interest on the certificates of indebtedness has been paid; and in this event the Canal Company would have only the personal security of the parties who are to go on the indemnity bonds.

*William T. Brantly* and *John P. Poe,* for the appellee.

Equity will grant relief in the case of the loss or destruction of instruments of value when there has been no misconduct on the part of the owner. The jurisdiction

belongs to the head of accidents. It is one of the functions of equity to "deliver from the dangers owing to misfortune or oversight." *Adam's Eq.*, 166; 1 *Story's Eq. Jur.*, secs. 83, 84; 1 *Fonblanque Eq.*, B. 1, ch. 1, sec. 3; *Fell's Point Savings Institution vs. Weedon*, 18 *Md.*, 320.

The exercise of the jurisdiction in the case of lost bonds is very ancient and universally recognized. *Adam's Eq.*, 167; 1 *Story's Eq. Jur.*, secs. 79, 81, 82; *Rootham vs. Dawson*, 3 *Anst.*, 859; *Cooper's Eq.*, 129, 130.

Execution of a new bond may be decreed as well as payment, and this before as well as after maturity, upon proper indemnity being offered. 1 *Story's Eq. Jur.*, secs. 83, 85; *Adam's Eq*, 166, 167; *Davies vs. Dodd*, 4 *Price*, 176; *Hopkins vs. Adams*, 20 *Vermont*, 407; *Lawrence vs. Lawrence*, 42 *N. H.*, 109; *Chewning vs. Singleton*, 2 *Hill's Ch.*, 371; *Redfield's and Bigelow's Leading Cases on Bills of Exchange and Promissory Notes*, 688-689.

The present case falls within the rule. The loss of the bonds in question is under the head of "such unforseen events, misfortunes, losses, acts or omissions as are not the result of any negligence or misconduct in the party." It was "an occurrence in relation to a contract which was not anticipated by the parties when the same was entered into, and which gives an undue advantage to one of them over the other in a Court of law." If relief be not granted an inequitable loss or injury would fall upon the appellee from circumstances beyond his own control. The interposition of a Court of Equity is justified in the present case, because a Court of law cannot grant relief, and the appellee has a conscientious title to relief, and one recognized by the jurisprudence of the State. 1 *Story's Eq. Jur.*, secs. 78, 79, 89, 109; *Jeremy's Eq.*, B. 3, Pt. 2, *p.* 358; *Marten vs. Bank of the United States*, 4 *Wash. C. C.*, 253; *Savannah National Bank vs. Haskins*, 101 *Mass.*, 370.

The jurisdiction is general, and there is nothing in the principles as laid down in the text books or in the cases to

take coupon bonds yet to mature, out of the rule to which they belong by reason and analogy. They are not the debt itself, but are the evidence of the owner's title to the debt. They are negotiable, and this is held by some cases to constitute the right to relief in equity. To refuse relief now would be to expose the appellee to undue perils in the future assertion of his rights. Equity will grant relief in cases where accident has put it out of the power of one party to obtain what it was intended he should enjoy. 1 *Story's Eq. Jur.*, sec. 86 ; *Thayer vs. King*, 15 *Ohio*, 242 ; *Lawrence vs. Lawrence*, 42 *N. H.*, 109 ; *Hopkins vs. Adams*, 20 *Vermont*, 407.

When a Court of equity relieves upon the loss of negotiable instruments, indemnity must be given. In the present case the most ample indemnity is offered to the appellant. The appellee does not ask for duplicate bonds, but is content to take the less valuable certificates of indebtedness, which are not transferable except subject to the equities between the parties.

No harm can possibly befall the appellant should the lost bonds be discovered. These certificates themselves, furnish to a great degree an indemnity in that they are not negotiable as coupon bonds are.

Moreover by the terms of the decree, bonds of indemnity must be filed both upon the payment of interest and of principal. Hence the objection that a bond of indemnity given generally would be the only protection afforded the appellant, and that this may have expired or become valueless when it may be necessary to sue upon it is overturned. The certificates of indebtedness will always be affected by the equities between the parties, and should the lost bonds ever come to light in the hands of a *bona fide* holder, the certificates of indebtedness would thereby become valueless, and should any interest have been paid upon them, the appellant will be saved harmless by the bond of indemnity filed upon such payment.

The allegation of the appellant that the State of Maryland is a necessary party to the bill of complaint, without whose presence the Court cannot proceed to decree thereon, upon the ground, that the State of Maryland is mortgagee of all the property and revenues of the appellant, is altogether irrelevant. The bill of complaint does not seek to create a new indebtedness on the part of the appellant. It merely seeks to preserve the evidence of an old indebtedness which was entered into with the consent, and by the authority of the State. The State of Maryland is, therefore not at all interested in the questions raised by the bill of complaint since, even in the event of the lost bonds being discovered, yet the indebtedness of the appellant ahead of the mortgages to the State would not be thereby increased nor the rights of the State in any way invaded.

Alvey, J., delivered the opinion of the Court.

There is no question in this case as to the ownership and loss of the bonds. The proof as to those facts is full and complete. There are two questions presented by the record. 1st, Whether the State is a necessary party defendant; and, 2dly, Whether such relief can be granted as was decreed by the Court below.

1. We think the State was not a necessary party defendant. It is admitted that bonds, such as those described in the appellee's bill, were issued and sold by the Chesapeake and Ohio Canal Company; and that such bonds were included among those authorized to be issued under the Act of 1844, ch. 281. There is no question therefore as to the liability of the Canal Company on the bonds, if produced, nor is there any question as to the extension or enlargement of the State's waiver of priority under the Act of 1844. The State's prior lien was waived only to the extent of the bonds that were issued under the Act of 1844, and the certificates of indebtedness decreed

to be issued by the Canal Company were designed to, and can only, stand in lieu of the lost bonds ; and if the bonds, or any of them, should hereafter be discovered, or be produced by parties entitled to hold them, the corresponding certificates would at once cease to be obligatory. Such certificates will have no negotiable quality, and if they should be assigned, the assignee would take them subject to all the equities and defences that the Canal Company would have as against the original holder. The State, therefore, has no such immediate and direct interest in the matter as to require it to be made a party. The distinction between a proper and a necessary party may well be taken here, in view of the non-liability of the State to be sued. We only decide that the State is not an indispensable party to the present bill.

2. As to the second queston, we think that, upon the allegations and proof, the appellee is entitled to the relief that was decreed him by the Court below.

The relief invoked is administered by a Court of equity in the exercise of its jurisdiction to relieve against accident. Among the most ordinary instances of relief furnished under this head of equity jurisdiction are those in respect to lost bonds and negotiable securities. It is a jurisdiction, as applied to lost bonds and negotiable securities, long and well established, and it will be exercised and relief granted whenever the loss or destruction of the instrument has happened without the negligence or fault of the party applying, provided such relief can be given without derogating from any positive agreement, or violating any equal or superior equity in other parties. *Sto. Eq. Juris.*, *secs.* 81, 85, 86. The foundation of the equity jurisdiction, in respect to lost bonds and negotiable securities, has been the superior powers and facilities possessed by the Courts exercising that jurisdiction over those possessed by the common law Courts, for doing full and complete justice between the parties ; the Courts of equity making

it a condition of the relief granted that full and secure indemnity should be given the defendant against all risk. *Walmsley vs. Child,* 1 *Ves.*, 341; *Ex parte Greenway,* 6 *Ves.*, 812 ; *East India Co. vs. Boddom,* 9 *Ves.*, 464; *Hansard vs. Robinson,* 7 *B. & Cr.,* 90; *Byles on Bills,* 302.

The reason for the exercise of the jurisdiction with respect to lost bonds was somewhat different from that upon which the Court assumed jurisdiction in the case of lost negotiable securities not under seal; but this case involves the exercise of the jurisdiction as it applies both to lost bonds and to lost negotiable instruments. The bonds in question were coupon bonds, in the usual form of such securities, and intended to pass by manual delivery, and which, if not destroyed, have the qualities of negotiable paper, notwithstanding they were issued under the seal of the corporation. Such bonds are treated as negotiable by the commercial usages and understanding of the country, and their negotiable quality has been fully recognized, not only by many of the State Courts, but by the Supreme Court of the United States, in repeated decisions; and being negotiable, the rules applicable to negotiable paper apply to them. *White vs. Vermont & Massachusetts R. Co.,* 21 *How.,* 575 ; *Mercer County vs. Hackett,* 1 *Wall.,* 83; *Gelpcke vs. City of Dubuque,* 1 *Wall.,* 175, 206 ; *Murray vs. Lardner,* 2 *Wall.,* 110 ; *Thompson vs. Lee County,* 3 *Wall.,* 327 ; *Aurora City vs. West,* 7 *Wall.,* 82. The coupons, when severed from the bonds, are also negotiable and pass by delivery. From the time they are severed they cease to be incidents of the bonds, and become in fact independent claims, negotiable, and upon which separate actions may be maintained, without producing the bonds to which they were originally attached. They, therefore, have all the essential attributes of commercial paper. *Thompson vs. Lee County,* 3 *Wall.,* 327 ; *Clark vs. Iowa City,* 20 *Wall.,* 583. The principle of these cases has been fully sanctioned by this Court, in *State of*

*Virginia vs. Chesapeake & Ohio Canal Co.*, 32 *Md.*, 547, in reference to these bonds.

Such being the character of the securities shown to have been lost or destroyed, it is contended by the appellant that it would be dangerous and unprecedented to furnish the relief decreed by the Court below. In this, however, we do not agree. We can perceive no good reason why the ordinary relief should not be given,—such as would be afforded in case of the loss of a negotiable promissory note or bill of exchange, payable to bearer, or after blank indorsement. The bonds, and the coupons attached, stand upon the same footing as ordinary negotiable paper, and the principle that would afford relief in the one case ought to afford it in the other.

The only special objection that can be urged against affording relief in this case, which would not apply to the ordinary case of a lost promissory note or bill of exchange, is the length of time to elapse before the maturity of the bonds, and the difficulty of securing full and complete indemnity to meet all the contingencies that may occur in the mean time. It is said that parties perfectly good to-day may die or become insolvent before the expiration of the period for the maturity of the bonds, and before the development of facts which may determine the liability of the appellant for the bonds supposed to be lost. This is certainly true, but the same may be said of all bonds intended as indemnity against events that may occur in the future. The whole subject, however, is fully in the control of the Court; and as indemnity is to be furnished upon each payment of interest, as well as upon the payment of the principal sum, if, at any time before final payment, it be made to appear that the indemnity for past payment was insufficient, or had become insecure, the Court may well make it a condition precedent to the receipt of further payments on the certificates, that additional indemnity be given in respect to payments previously

made. The objection that this may and will entail trouble upon the officers of the corporation, to inquire and be informed as to the pecuniary standing and worth of parties, certainly has force; but, in a case like the present, where an accidental misfortune has happened to a party without his fault, and justice and good conscience require that he should be relieved, such an objection cannot be permitted to override the rights of the party. With proper precaution all risk may be provided against; and if the bonds should be discovered, or be presented by a *bona fide* holder, of course, the certificates, or such of them as may represent the bonds thus brought to light, will thenceforth cease to be of value.

Heretofore the only remedy in case of lost negotiable instruments was to be obtained in a Court of equity; (*Hansard vs. Robinson,* 7 *B. & Cr.,* 90;) but the legislature, at its last session, (Act 1876, ch. 345,) provided that any party, otherwise entitled to sue and recover at law, upon any promissory note, bill of exchange, bill of lading, warehouse or storage receipt, or *other negotiable instrument,* may sue and recover at law, notwithstanding his inability, from any cause, to produce such instrument in evidence at the trial, or surrender the same to the defendant, provided that the absence of such instrument shall be sufficiently accounted for, under the ordinary rules of evidence, to allow the introduction of secondary proof of the contents thereof, and that no judgment shall be entered for the plaintiff until a good and sufficient bond shall have been first filed by the plaintiff, or on his behalf, in such penalty and with such sureties as the Court shall approve, conditioned to hold and keep the defendant harmless, upon satisfaction of the judgment, to the same effect and intent as if the missing instrument were produced and then and there surrendered to the defendant. Whether this act can be fairly construed to embrace bonds, such as those shown to have been lost or destroyed in this case, is a question that

we need not now decide. But,. conceding that such bonds are embraced by it, it would form no ground for withholding relief in a case like the present, where a long time must elapse before the bonds mature and thereby become actionable, and in the meantime the evidence may be lost upon which the party could recover.

We think the decree passed by the Court below is in all respects proper, and must therefore be affirmed.

*Decree affirmed.*

(Decided 16th June, 1876 )