PEOPLE ex rel. MANHATTAN SAV. INS. v. OTIS.  519

Second Department, May Term, 1881.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE MANHATTAN SAVINGS INSTITUTION OF THE CITY OF NEW YORK, Respondent, v. NORTON P. OTIS, Mayor of the City of Yonkers, and WILLIAM H. DOTY, Clerk of said City, Appellants.

*Contract — when an act impairs the obligation of it — The legislature cannot exercise judicial power — Power of the legislature over municipal and private corporations — 1880, chapter 59.*

Chapter 59 of 1880, requires the mayor and clerk of the city of Yonkers, after the Manhattan Savings Institution has published a notice, and executed and delivered to the city a bond of indemnity as therein prescribed, to execute and deliver to the said institution duplicates of certain negotiable bonds made by the city, which had belonged to and been stolen from the said institution. It also declares that after the publication of the said notice and the delivery of the said duplicate bonds, the city shall be relieved and discharged from all liability upon the original bonds and gives to *bona fide* holders of such bonds a right of action upon the bond of indemnity executed by the Manhattan Savings Institution.

*Held*, that the act, in so far as it exempted the city from liability on account of the bonds issued by it, impaired the obligation of a contract, and was unconstitutional and void.

That as the protection and enforcement of the rights of individual citizens growing out of past transactions, belonged to the judicial and not to the legislative department of the government, the act was also void as being an exercise of a power not granted to the legislature.

Municipal and private corporations, as regards the power of the legislature to compel their action for private purposes against their consent, stand on the same footing as individuals.

Appeal from an order made at Special Term, granting to the relator, The Manhattan Savings Institution of the City of New York, a writ of peremptory *mandamus* directed to Norton P. Otis, mayor of the city of Yonkers, and William H. Doty, clerk of said city, commanding them forthwith to execute and deliver to the said relator duplicates of certain bonds of the city of Yonkers, with their accompanying coupons, therein mentioned.

The original bonds, 118 in number, for $1,000 each, with their accompanying coupons, were payable to bearer, and were of the

·520    PEOPLE ex rel. MANHATTAN SAV. INS. v. OTIS.

SECOND DEPARTMENT, MAY TERM, 1881.

bonds known as the " City of Yonkers Seven Per Cent Consolidation Bonds," issued by the city of Yonkers, pursuant to chapter 297 of the Laws of 1875. Such bonds were duly delivered to the said Manhattan Savings Institution for value, and remained in its possession until they were stolen at the time when a certain burglary was committed at such bank on or about the 27th day of October, 1878, since which time they have not been recovered.

At the application of said Manhattan Savings Institution the legislature on the 12th day of March, 1880, passed a certain act entitled "An act for the relief of the Manhattan Savings Institution of the City of New York, and to authorize the city of Yonkers to issue bonds for certain purposes," and designated as chapter fifty-nine.

The act requires the mayor and clerk of the city of Yonkers to execute and deliver to the said Manhattan Savings Institution duplicates of such stolen bonds, with their accompanying coupons, after certain notices have been published by the said savings institution as therein prescribed, and after a bond of indemnity has been executed by it and delivered to the city, and declares that after the delivery to the said Manhattan Savings Institution of such duplicate bonds, the city of Yonkers shall be discharged of and from all liability upon the original bonds described in the first section of the act, to the said Manhattan Savings Institution and to all persons purchasing the same, after due publication of the notice mentioned in the first section of the act, but provides that " the lawful owners thereof (if any) shall have a right of action therefor against the said Manhattan Savings Institution upon the bond " of indemnity.

The said savings institution complied with the terms and conditions imposed upon it by said statute, and demanded of said mayor and city clerk the execution and delivery of the duplicate bonds of the city of Yonkers as mentioned in said act.

The said mayor and clerk refused to comply with such demands, upon the ground that said statute was unconstitutional and void.

The said Manhattan Savings Institution thereupon made application to the Supreme Court, at Special Term, for an order granting a writ of peremptory mandamus to compel said mayor and city clerk to execute and deliver said duplicate bonds.

Such application was based entirely upon said chapter 59 of the

PEOPLE ex rel. MANHATTAN SAV. INS. v. OTIS.  521

Second Department, May Term, 1881.

Laws of 1880, and the proceedings taken by the relator in conformity therewith.

The facts were not disputed, and the objection of said mayor and city clerk was based solely upon the unconstitutionality of said statute.

The Supreme Court at Special Term granted an order for the required writ of *mandamus*, as aforesaid, from which order an appeal to the General Term was taken.

*Theodore Fitch*, for the appellants.

*John H. Platt* and *Waldo Hutchins*, for the relator.

Gilbert, J. :

The right of the relator to a *mandamus* depends upon the validity of the act of March 12, 1880. (Ch. 59.) We are of opinion that the act is invalid for two reasons. 1st. The provision exempting the city of Yonkers from liability on account of the bonds originally issued, after the duplicates shall have been delivered, plainly impairs the obligation of the contracts created by such original bonds. It is not an answer to this objection to say that the act merely destroys the negotiability of the bonds after a specified time. For that of itself would impair the obligation of the contract. A bond or other obligation payable to bearer is a contract to pay the person who shall be the owner thereof, and who shall present it for payment at the proper time. A statute which exempts an obligor from liability to a person so designated in the bond, changes its legal effect injuriously to the latter, and so impairs its obligation. As well might it be contended that a statute which exempted a maker of a promissory note, put in circulation before the passage of the statute, payable to the payee or order, from liability to an innocent indorsee, did not impair the obligation of the contract. Such legislation not only impairs the obligation of negotiable contracts but in many cases would destroy them altogether. For a transfer of the contract would be equivalent to its cancellation. The transferer could not enforce it, because he had parted with his interest in it, and the transferee could not because the statute had exempted the obligor from liability to him. But the statute of 1880 (ch. 59) does not affect

the negotiability of the bonds in question. Its language is that, after the delivery of the duplicate bonds, the city of Yonkers shall be discharged from all liability on the original bonds to the relator, and to all persons purchasing the same after the time referred to, but the lawful owners thereof (if any) shall have a right of action therefor upon the duplicate. This provision preserves the negotiability of the duplicate bonds, but shifts the liability upon the original bonds from the obligor to the first obligee. Surely such an interference with contracts is in the teeth of the constitutional inhibition. We cannot give effect to the direction to issue duplicate bonds, as a provision independent of the exemption of the city from liability on the original bonds, for the reason that the latter is one of the means provided for securing the city against the risk of increased liability incurred by the former. Both provisions are, therefore, inseparably connected.

2d. The statute is a usurpation of power which has been vested exclusively in the judicial department of the government. No doubt the whole law-making power of the State, not expressly or impliedly withheld, has been vested in the legislature. It is equally true, however, that the judicial power of the State has been vested in the courts established by the Constitution, and that the grant of the latter power excludes the right of any other department of the government to exercise the same power. The line between legislative and judicial power may not be readily discerned in all cases. But certain tests have been established by common reason and experience. One of these is, that the protection and enforcement of the rights of individual citizens growing out of past transactions belongs to the judicial and are not within the scope of the legislative power. (Cooley Const. Lim., 88, *et seq.*) Surely the legislature has not the power to pass a statute after the supposed loss of a bond made by an individual, determining the fact of such loss and compelling the obligor to give a new bond to the obligee. Such a statute would not be within the definition of a law, which is "a rule of civil conduct," but ought rather to be termed an act of despotic power. Nor would it make any difference whether the statute provided for an indemnity of the obligor or not. The question is one of power only. If the legislature has the power of so acting retrospectively upon the vested rights of citizens, it has it unconditionally. No one

PEOPLE ex rel. MANHATTAN SAV. INS. v. OTIS. 523

SECOND DEPARTMENT, MAY TERM, 1881.

I apprehend, would contend for the validity of such a statute. Nor could a double liability so created be enforced except by an infringement of those provisions of the Constitution of the United States and of this State, which declare that no citizen shall be deprived of his property without due process of law. A statute which may produce such a result cannot be upheld. The only question remaining, therefore, is, whether the fact that the bonds in question were issued by a municipal corporation to a savings bank, both of which bodies were incorporated under the laws of this State, makes any difference in the rule of law applicable to the case. The decision of the Court of Appeals in the case of the *People ex rel. Dunkirk, etc., R. Co.* v. *Batchellor* (53 N. Y., 128–140), is conclusive upon this subject. It was there held that municipal corporations might be compelled to enter into contracts for an exclusive public purpose without their consent, but that they could not be when the purpose was private. In answer to the argument that municipal corporations are creatures of the legislature and subject to its control, the court remarked : "In a certain sense this is true. They are created by the legislature as instrumentalities of the government, and so far as legislation for governmental purposes is concerned, are absolutely subject to its control. * * * It is within the province of legislation to provide for enforcing the performance of contracts when made, but to enforce the making of them by individuals is entirely beyond it. We have seen that municipal corporations may be compelled to enter into contracts for an exclusive public purpose, but they cannot be where the purpose is private. This is equally beyond the province of legislation in the case of such corporations as in those of private corporations or individuals." (P. 140.) It was said on the argument that the issuing of duplicate bonds in the place of others which had been lost, was not an entering into new contracts. Conceding that to be true, it does not affect the applicability of the decision cited. For the principle of that decision plainly places corporations, in respect to the power of the legislature to compel their action for private purposes against their consent, on the same footing as individual citizens. That principle was again asserted by the Court of Appeals in *Horton* v. *Town of Thompson* (71 N. Y., 513, 521–525). Statutes were cited in behalf of the relator as precedents for the act of 1880, but in all of them

some mode of judicial inquiry and determination was provided for. That makes a radical distinction between those statutes and the act of 1880.

The law, irrespective of the act of 1880, is ample to afford the relator suitable and adequate relief; and we think that such relief should be sought in that way. (Adams Eq., 167; Story Eq. Jur., §§ 82–89; *Ches. and O. Canal Co.* v. *Blair,* 45 Md., 102; *Farce* v. *City of Elizabeth,* 27 N. J. Eq., 408; *N. O., J. and G. N. R. Co.* v. *Miss. Coll.,* 47 Miss., 560; and see *Lawrence* v. *Lawrence,* 42 N. H., 109.)

The order should be reversed with ten dollars costs and disbursements, and an order should be entered denying the motion with ten dollars costs.

DYKMAN, J., concurred; BARNARD, P. J., dissented.

Order granting *mandamus* reversed, with ten dollars costs and disbursements, and motion denied with ten dollars costs.