GALVESTON CITY CO. V. ORIGEN SIBLEY ET AL.

(Case No. 1316.)

1. STOCKHOLDER — LOST CERTIFICATE — DECREE. — In a suit to establish the former existence, validity and contents of a certificate of stock in a joint stock company, its loss, ownership, and the plaintiffs' rights under it, which was brought in 1878, it was shown that the stock was issued to the ancestor of plaintiffs in 1841, and still stood in his name on the books of the company. The court found that the certificate had been lost, and the plaintiffs, as heirs of the original owner, owned it. *Held,*

   (1) The judgment of the court decreeing the ownership of the certificate to be in plaintiffs on the facts found was proper.

   (2) Such a judgment must provide for ample indemnity to the company against all risks that the certificate, which was transferable by indorsement, might be found, and its ownership be found in another.

   (3) On account of the value of the certificate being fluctuating, from $150 to $10,000, and the necessity for a continuing indemnity to the company against loss, the cause should remain upon the docket of the court below until from lapse of time or otherwise all risk that the company might be held liable on the original stock had ceased.

2. DECREE. — See following opinion the decree as reformed by the supreme court in this case.

ERROR from Galveston. Tried below before the Hon. Wm. H. Stewart.

Suit brought March 23, 1878, by the heirs of Origen Sibley, alleging the issuance to their father of certificate No. 191, for a share of stock in the Galveston City Company, May 7, 1841; that he died in the year 1865, in the state of Alabama; that he owned said certificate of stock at his death; that it had been lost or destroyed and petitioners had never been able to find it; that in February, 1878, they demanded of said company the recognition of their ownership of stock and the issuance to them of a duplicate, which was refused by the company, and they brought suit to establish their rights as owners of said stock, and for a duplicate certificate, or to recover its value, alleged to be $20,000.

Defendants demurred to the petition, and answered, admitting the issuance of the certificate to Sibley, as stated, in 1841, but denying that he continued the owner thereof up to his death, setting up facts inconsistent with such continued ownership; that the title thereto passed by indorsement; that the company was liable to the holder of the certificate whenever presented, and denying the right of plaintiffs to the issuance of any additional share of stock, pleading limitation and laches, etc. Jury waived and the case submitted to the court.

The court decreed in favor of the plaintiffs, incorporating in the decree a conclusion of facts found by the court, substantially as follows:

1st. That upon the 5th of February, 1841, the Galveston City Company was duly incorporated by the congress of the republic of Texas.

2d. That at the date of said act of incorporation said Galveston City Company was the owner in fee simple of one league and labor of land on the eastern end of Galveston island, of Galveston county, upon which the city of Galveston is located. . . .

3d. That at the date of said act of incorporation said league and labor of land was conveyed to said corporation, and constituted all the capital stock of said corporation, which stock was divided into one thousand shares, entitling each of the owners of said shares to one thousandth part of the capital stock of said corporation.

4th. That afterwards, to wit, on the 7th day of May, 1841, the said Galveston City Company, being then and there fully invested with the title to said league and labor of land, with full power and authority over the same and the shares of the company, made, executed and delivered to Origen Sibley a certificate, designated as certificate No. 191, original stock of said company, the same being stock issued out of Book A, containing two hundred shares, by virtue of which certificate the said Galveston City Com-

pany conveyed to the said Origen Sibley one undivided one thousandth part of the stock of said company, and by which said certificate the said Origen Sibley then and there became the legal owner of one share of the stock of said Galveston City Company, together with all and singular the rights, privileges, equities and immunities belonging or appertaining to a shareholder or stockholder in said company owning one share thereof.

5th. That said Galveston City Company still exists as a corporation, and owns large and valuable real and personal estate in the county of Galveston.

6th. That said share of stock in said Galveston City Company is of the value of $7,000.

7th. That said Origen Sibley departed this life on the 1st day of October, 1864, in Baldwin county, state of Alabama, and there is no evidence that the legal or equitable title to said share of stock ever passed out of him; but there is proof that he had in 1852 sold four other shares of said stock which were issued to him at the same time of the issuance to him of said share No. 191. The value of a share in 1852 was $150.

8th. That the books and records of said Galveston City Company still show the original issuance of said share No. 191 to Origen Sibley, and contain no evidence of the cancellation or surrender or transfer of said certificate No. 191 by Origen Sibley, or by any other person, though they show the transfer by Origen Sibley of the other four shares.

9th. That the following persons, plaintiffs, are the legal children and heirs of said Origen Sibley, to wit (naming them), and as such heirs of Origen Sibley, deceased, are the owners of whatever interest said Origen Sibley, deceased, had in said share No. 191 at the time of his death, and from all the said evidence I conclude that the plaintiffs are the owners of said share No. 191.

10th. That said certificate of stock originally issued to

Origen Sibley has been lost or destroyed, and is substantially as follows:

"This is to certify that we, Levi Jones, William R. Johnson and Thomas Green, trustees of the city of Galveston, in consideration of the return of the certificate of corresponding book and number, as formerly issued by said Levi Jones (one of the first four hundred shares), do grant, bargain and sell to Origen Sibley, his heirs and assigns, forever, one share, No. 191, in the city of Galveston, to be holden and enjoyed by him and his assigns upon the terms prescribed in the deed, bearing date the 15th June, 1837, of M. B. Menard, Robert Triplett, Sterling Neblett and William Fairfax Gray, constituting us the trustees, and in the agreement entered into between us and the stockholders in said city, as set forth in the proposals for subscription.

"Witness our hands this 7th day of May, 1841.

(Signed)                          "LEVI JONES,

"THOS. GREEN,

"Trustees."

The decree declared the plaintiffs to be the legal owners of the stock, and required them to execute an indemnifying bond to the company in the sum of $10,000.

The facts are too lengthy for insertion.

*Ballinger & Mott*, for plaintiffs in error.

I. In the total absence of any evidence whatever of the existence of the stock in the hands of Origen Sibley since May, 1841, except its issuance to him at that date, and the absence of all evidence of claim to the stock by said Sibley since that date in any form or shape whatever, he being a man of business habits; and in the absence of claim, or knowledge of any claim, to said stock on the part of his legal representative and heirs until claim made shortly before the suit brought, said stock being transferable by indorsement, no presumption of continued

ownership of stock in his heirs can be indulged. Strange v. H. & T. C. R. Co., 53 Tex., 162; Bank v. Lanier, 11 Wall., 369; Leitch v. Wells, 48 N. Y., 613; 1 Story's Eq. Jur., 88; Bispham's Eq., § 467; Hoddy v. Hoard, 2 Ind., 474, in Davis' Ind. Dig., title "Deed," n. 78; 48 Md., 109; 2 Parsons on Notes, 288; Morse on Bank., 474; 2 Wharton's Ev., § 1234; 1 Best on Ev., § 331; 2 Bouvier, 338, "Presumptions;" 1 Stark. Ev., 34; 1 Cow. & H.'s Notes to Phil. Ev., 456, 458, 459, 461, 464; 465, 473; Co. Litt., 816; Lockhart v. Trimble, 18 Tex., 110.

II. The decree is inconsistent and unjust in finding that the plaintiffs own such rights as Origen Sibley had at his death, and thereupon making the plaintiffs present shareholders in said company, being only the quit-claim rights of their father, and making the company guarantor and responsible to their father's absolute right to the stock. Chesapeake & O. Canal Co. v. Blair 48 Md., 102, 112; Morse on Bankruptcy, 474.

*Geo. P. Finlay*, for defendant in error.

I. A corporation holds and acts for the interests of its stockholders, and a stockholder's interest cannot be lost or forfeited by laches or lapse of time during the existence of the corporation, unless it is alleged and shown that the stockholder has in the meantime failed to perform some duty or do some act which has devolved on him by the by-laws, rules or regulations of the charter or the board of directors. The officers and managers of a corporation are trustees for the stockholders. 21 Wall., 616; 1 N. Y., 84; Abbott's U. S. Digest, vol. 8, pp. 902–4, "Implied Trusts," "Limitation of Actions;" Grumbles v. Grumbles, 17 Tex., 472; White v. Leavitt, 20 Tex., 703; Hunter v. Hubbard, 26 Tex., 537.

II. A plea of limitation is not good, made by a corporation against a stockholder, unless the stockholder has failed in the performance of some duty devolving on him

under the by-laws, rules and regulations of the company, or the company has done some act which would cause the statute of limitation to commence running against the stockholder's rights. The corporation is a trustee for the stockholder, or rather the officers and managers of a corporation are trustees for the stockholders. 21 Wall., 616; 17 Tex., 472; 20 Tex., 703; 26 Tex., 537.

III. The court did not err in rendering a decree establishing plaintiffs' rights to share of stock No. 191 in said company (tenth assignment of error). When the name of one appears on the stock book of a corporation as a stockholder, it is *prima facie* evidence that he is so, and the burden of proof to the contrary is upon him that denies it. The ownership of the stock once proved to exist, it is presumed to continue until an alienation is shown. Under the facts in this case the law will presume that the certificate was lost. Turnbull *v.* Payson, 5 Otto, 421; Hoagland *v.* Bell, 36 Barb. (N. Y.), 57; Plankroad *v.* Rice, 6 Barb. (N. Y.), 162; Mudgett *v.* Horrell, 33 Cal., 25; Turnpike *v.* Vanness, 2 Cranch C. C., 457; Coffin *v.* Collin, 17 Me., 440; Merrell *v.* Walker, 24 Me., 237; Sanser *v.* Upton, 1 Otto, 56; Brown *v.* Burnham, 28 Me., 38; Farr *v.* Payne, 40 Vt., 615; Bell *v.* Young, 1 Grant (Pa.) Cases, 175; Brown *v.* King, 5 Met. (Mass.), 172; Oneil *v.* Mining Co., 3 Nev., 141. As to loss of certificate, see Vaughn *v.* Beggers, 6 Ga., 188; Fretwell *v.* Morrow, 7 Ga., 264; Abbott's U. S. Dig., art. 1768, and authorities; 1 Greenleaf's Ev., §§ 48, 558; Gal. City Co. *v.* Scott, 42 Tex., 535. See this case for full explanation of the organization of the company. As to remedy, see p. 561, Abbott's U. S. Digest, vol. 5, "Evidence," §§ 696, 698, 275; Abbott's U. S. Digest, vol. 3, "Corporations," §§ 619, 626, 657, 679.

BONNER, ASSOCIATE JUSTICE. — It is conceded by the distinguished and diligent counsel, both for the appellants and appellees, that they have been unable to find a re-

ported case of lost certificate of stock like the one now before the court. We have found none, but have endeavored to dispose of this case by the application of the principles and practice found in analogous cases.

It has not been deemed necessary to pass upon several of the minor questions raised, but upon the more important only.

The jurisdiction of a court of equity to prevent loss arising from an accidental cause is of very ancient origin, probably coeval with its existence as a distinct branch of jurisprudence, and one of the three original grounds for equitable relief. 1 Story's Eq., § 79; 1 Wait's Actions and Defenses, 183; Bispham's Principles of Equity, § 177.

The flexible powers of a court of equity are peculiarly adapted to such cases, to enforce the rights of the one and to protect those of the other party. If the plaintiffs, Origen Sibley *et al.* (as they claim to be), and as found by the court below, are the legal owners of one share of stock, evidenced by certificate No. 191, in the Galveston City Company, the defendants below, and if this certificate has been lost, then justice and good conscience would require that they should be relieved. This is not denied by the company, but the main controversy in the case arises upon the questions whether the plaintiffs have shown themselves to be the parties entitled to relief, and as to the mode of this relief. It is denied that the mere fact of the loss of the certificate does of itself authorize the resort to a court of equity.

This is not simply a suit to establish the mere loss of the original certificate, as though an ordinary indebtedness for which relief could be had at law, but one under our blended system of law and equity, in which not only the former existence, validity and contents of the certificate are sought to be established, but also its loss, the ownership of the plaintiffs, and, as a consequence, their present and prospective enjoyment of the rights, powers

and privileges incident thereto. The lapse of time would greatly weaken their evidence of ownership to the share of stock. Until established, its value in the market would be greatly impaired, and their rights as a stockholder might be denied, or if admitted, it might be at the peril of the company itself. Under the circumstances, we think such case is presented by the pleadings, which, if sustained by the testimony, should entitle the plaintiffs to relief. The issuance of the original certificate to the alleged ancestor of the plaintiffs, Origen Sibley, and that the share of stock now stands in his name on the books of the company, is not controverted. The court has found that the certificate has been lost, and that the plaintiffs, as the heirs at law of Origen Sibley, are the owners of it. Under these facts, and the presumptions arising therefrom, in our opinion, a *prima facie* case was made, which, in the absence of evidence to the contrary other than bare presumptions, would sustain the findings of the court, and entitle the plaintiffs to relief.

But it is a cardinal principle of equity, that although the company, even had it shown a desire so to do, could not profit by the misfortune of the plaintiffs, yet the court will grant relief only upon the condition that full and secure indemnity must be given to the company against all risk. The company is in no default, and to the misfortune of the plaintiffs must be added this burden. Chesapeake & Ohio Canal Co. *v.* Blair, 45 Md., 102; 1 Wait's Actions and Defenses, 165; Jones on Railroad Securities, § 389.

This indemnity should be governed by the circumstances of the particular case. If not only the loss, but also the destruction of the instrument and the ownership of the plaintiffs, should be clearly shown, then, if required at all, it would, as a general rule, be but nominal.

Ordinarily, when relief has been granted in cases of lost instruments, assignable or negotiable, it has been

those for a sum certain, and in which the existence and loss of the instrument, as well as judgment upon the same, have been sought and obtained in the same suit. In such cases the amount of the indemnity could be readily fixed, and the parties would within a reasonable time be protected by the bar of limitations. Besides, the original demand having been substituted by the judgment, there would be no danger that a subsequent owner of the latter could claim to be a purchaser in good faith without notice.

Where, however, the obligation has considerable time to run before it would mature or be barred by limitations, greater risk would be incurred, and particularly if the lost negotiable instrument should be substituted by one of like character.

In the case of the Chesapeake & Ohio Canal Company v. Blair, 45 Md., 102, where the instrument lost was a negotiable coupon bond which had still several years to run, the risk was lessened by the issuance of a nonnegotiable certificate, payable at the same time as the bond. The only probable risk in such case would arise from the payment of the interest. Such precaution was a salutary one. To require that the defendant company, in the present case, should substitute the alleged lost certificate of stock, which was assignable by transfer accompanying it, without being required to be upon the books of the company by a new certificate not defeasible on its face, would be to demand that which the company is not under either a legal or moral obligation to perform. This, in the event the original certificate was not in fact lost, might force the company to recognize and pay a share of stock not voluntarily issued by them, and which would to that extent lessen the value of those previously issued. And besides, in the event the number of shares authorized by the charter had already been issued, then under the guise of judicial authority the company might

be compelled to do an unauthorized act and one *ultra vires.*

Under a proper construction of the judgment below, the right of the plaintiffs to the share of stock is defeasible both in their own hands and that of their assignees; yet this should appear so plainly as not to be the subject matter of controversy.

Again, the amount of the indemnity required of the plaintiffs should depend very much upon the rights sought to be exercised by them. It has not been the policy of the company to declare dividends, but to permit the stock to be absorbed in the purchase by the shareholder of lots of the company at a valuation placed thereon; the profits to the remaining shareholders being the appreciation of their stock by increase in the value of city property. If the plaintiffs then simply seek to participate in the meetings of the company and to vote their stock, then the bond of indemnity required of them would be comparatively nominal. If, however, when otherwise entitled to it, they should seek to receive the exclusive possession, control or ownership of their share of the capital stock, assets, or other property, real or personal, of the company, or to any dividend or share thereof which may be declared, this bond of indemnity should be proportioned to the increased risk. As the testimony shows that the value of this stock is fluctuating — from 1841, when first issued, to 1852, not exceeding $150, having since reached as high as $10,000, and being now estimated at $7,000, — and as the charter of the company seems to have no provision limiting its existence, the amount of the bond provided for in the contingency last above named, and the sufficiency of the security thereto, should be determined by the court, after a hearing by the parties, when the necessity therefor arises.

In view of the fluctuating value of this stock; the uncertainty when the necessity may arise for such bond of

indemnity; the length of time it may run, and probable change in the solvency of the sureties; the continuing character of the relief which which may be required from time to time; and the number and non-residence of the plaintiffs,— it is deemed proper in this case to adopt the practice, somewhat novel with us, but analogous to the proceedings of courts of chancery elsewhere, to require that this case remain open on the docket below until from lapse of time or otherwise the rights of the parties shall be so established that the case may be finally dismissed without prejudice to either party.

As the decree of the court below is, in our opinion, not sufficiently comprehensive to fully meet the circumstances of this case, it will be so reformed in this court as to conform to this opinion; and it is accordingly so ordered.

JUDGMENT REFORMED.

[Opinion delivered February 14, 1882.]

The following is the decree as reformed.

It is ordered that the judgment below be so reformed as to read as follows:

It is therefore considered, adjudged and decreed by the court, that the plaintiffs (here name them) are the legal owners of one share of stock in the Galveston City Company, to wit, the share represented by certificate No. 191, Book A, now standing in the name of Origen Sibley on the books and records of said company. That said share of stock No. 191 is a valid legal share of stock in said company, and that this decree or a certified copy thereof is and shall be held as the evidence of the right, title and interest of said plaintiffs in and to said stock, and to remain in full force and effect as such, unless said original certificate of stock shall hereafter be produced, and the superior right and title thereto be established to be in some other party, either by the agreement of the parties in open court or by the judgment of some court

of competent jurisdiction; or be so established without its production; in which event this decree shall be no longer in force or effect as evidence of title in the plaintiffs, their heirs, legal representatives or their assignees; but this shall in no wise impair any other rights the parties may have acquired by lapse of time, limitation or otherwise against any other party. That until such superior title shall be so established to be in some other party, this decree shall entitle the said plaintiffs, their heirs, legal representatives or assignees, to the rights, powers, benefits, immunities and privileges of a full stockholder or shareholder of said Galveston City Company, owning one share thereof, as fully as said Origen Sibley might have if living and owning said share No. 191; and that said company shall grant, accord and recognize unto the said plaintiffs, their heirs, legal representatives and assignees, all such rights, powers, benefits, immunities and privileges.

It is further considered, adjudged and decreed by the court, that the said plaintiffs shall make, execute and deliver to said Galveston City Company a good and sufficient bond of indemnity, with sureties residing within the state of Texas, or security situate therein, conditioned that the plaintiffs will fully indemnify and hold harmless said company against any and all loss or damage that may accrue to it in the event that said alleged lost certificate of stock No. 191 may hereafter be claimed and established to belong to any other person than said plaintiffs,— said bond of indemnity to be approved before delivery by the district court of Galveston county if in session, or by the judge thereof if in vacation. And that until said plaintiffs shall demand from said company any right to the exclusive possession or ownership of any of the capital stock, assets or other property, real or personal, of the company, or of any dividend or share thereof, that said bond shall be in the sum of $500, and shall be presented within a reasonable time; that is, before or within ninety days after the adjournment of this

court; and that in the event the said plaintiffs shall demand from said company the exclusive possession or ownership of any of the capital stock, assets, or other property, real or personal, of said company, or of any dividend or share thereof, that then a new bond, with like condition and security, and to be approved as before provided, shall be given in double the value at that time of such capital stock, assets, real or personal property, or of any dividend or share thereof so demanded, and to which said plaintiffs shall be rightfully entitled or adjudged, before the same shall be delivered, if the bond before given shall not be sufficient for this purpose.

It is further considered, adjudged and decreed, that if at any time before the rights of the parties shall have been finally established, adjusted and settled by agreement, limitation or otherwise, it be made to appear to said court or judge thereof that the indemnity for past payments is insufficient, or has become insecure, that then the said court or judge thereof shall make it a condition precedent to the receipt of any further capital stock, assets, real or personal property, or of any dividend or share thereof, that additional indemnity be given in respect to such payments previously made as well as those thereafter demanded; and that the giving of one new bond of indemnity shall not prejudice any rights under those theretofore given, the conditions of which have not been already performed; and that the failure or refusal to give any new or additional bond as above provided for shall have the effect to suspend the further operation of this decree, and the right to demand any future benefits thereunder until said bond shall be given and approved.

It is further ordered, that for the purpose of carrying out this decree, and until the rights of the parties shall have been fully adjusted, established and settled, that this cause remain open upon the docket of the court below.